**In re AMALGAMATED PROPERTIES, Inc.**

No. 387.

Circuit Court of Appeals, Second Circuit.

July 27, 1940.

Hetkin, Rubin & Hetkin, of New York City (Alfred H. Hetkin, of New York City, of counsel), for appellant.

Adolph C. Kiendl, pro se, appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

By an order entered April 7, 1939, the district court confirmed the debtor's plan of reorganization for an issue of mortgage participation certificates covering property known as 14 East 60th Street, New York City. The plan contemplated transfer of title to a new corporation, the appellant, modification and extension of the mortgage, and the appointment of Mr. Kiendl, the appellee, as trustee of the mortgage. The plan was to become effective as of April 1, 1939, although the "consummation date" was July 5, 1939, the

actual closing date. An order of consummation was entered June 24, 1939. Among other things the plan provided for certain payments to be made to Mr. Kiendl, as trustee, for distribution by him pro rata to certificate holders in satisfaction of arrears of interest on their certificates. At the closing date the appellant tendered to Mr. Kiendl a sum less than the amount to which he thought he was entitled. Thereupon he brought on a motion to have the court determine the correct amount. This resulted in the order appealed from.

The plan provided in Article III that Realty Associates Securities Corporation should pay to the new company $17,000 in cash and the Trustees of The Prudence Company, Inc., should pay to the new company $34,341.47 held by them. Out of these sums, aggregating $51,341.47, the new company was to pay the expenses of reorganization, and the balance it was to turn over to Mr. Kiendl for distribution to the certificate holders for interest arrears.[1] The order of June 24th directed these payments to be made. The expenses of reorganization amounted to $10,994.66, so that according to the literal provisions of the order of June 24th and in conformity with Article III of the plan, Mr. Kiendl should receive $40,346.81. The order on appeal directed the appellant to pay that sum. It contends that the order was wrong in disallowing a deduction of $5,783.47, claimed as an "operating deficit to April 1st, 1939."

This contention is based on Article VII of the plan, which is printed in the margin.[2] The closing statement of Prudence

Realization corporation, successor to the Trustees of The Prudence Company, Inc., in the management of the property, shows cash as of April 1, 1939 of $24,506.83. From this was deducted reserve for taxes due April 1, 1939, of $13,050 and pro-rated reserve for accrued taxes from April 1st to July 5th, 1939 (the closing date), for taxes due October 1, 1939 of $6,922.98. This left a balance of cash of only $4,533.85, and, as the trade accounts payable as of April 1st were $10,317.32, there was an apparent deficiency of $5,783.47, which was made up out of income collected subsequent to April 1st, thereby reducing the sum the new company should have received under paragraph 3 of Article VII.

Since the plan was to be effective as of April 1st and the new company was to have the income thereafter, it seems an extraordinary thing to charge the earlier income (April 1st cash) with a reserve for taxes accruing after that date. Nevertheless such charge was expressly provided for by Article VII of the plan. But the effect of such charge, so far as the appellee is concerned, was merely to decrease the cash balance, "if any," to be paid him under paragraph 2 of Article VII. Nothing was paid under that paragraph. It appears, however, that on March 27, 1939, the Trustees of The Prudence Company distributed to certificate holders $13,125.02 on account of interest arrears. But for this payment there would have been ample funds in the hands of the Prudence Trustees to meet all the charges contemplated by Article VII. Consequently, the appellant urges, the certificate holders were overpaid in March

---

[1] In this opinion we have adopted the figures—$34,341.47 and $51,341.47—used by both parties in their briefs and by the court below in reaching its decision in the order appealed from. The figures used in some of the papers in the record are slightly different—$34,314.47 and $51,314.47.

[2] Article VII

Application of Cash Held by Trustees of The Prudence Company, Inc.

All cash in the hands of the Trustees of The Prudence Company, Inc., or its agents (less tax reserves, together with an additional prorated reserve for accrued taxes to the date of closing, which shall be transferred to the New Company) as of the Effective Date of this Plan, representing collections of income from the Mortgaged Premises, unless otherwise

provided herein, shall be applied in the following manner:

1. To the payment of creditors who have rendered services or sold materials to The Prudence Company, Inc., or its Trustees or its or their agents acting under the assignment of rents, and to the payment of commissions due the managing agents of said property.

2. The balance of such cash, if any (together with the payment to be made by the New Company as provided in Article III, subdivision 5), shall be paid to the Trustee to be allotted to Certificate Holders pro rata in full payment of interest arrears.

3. All cash in the hands of the Trustee of The Prudence Company, Inc., or his agents, representing collections from the Mortgaged Premises after the Effective Date, shall be paid to the New Company.

by the amount of the April 1st deficit, and the sum of $5,783.47 should in fairness be deducted from the $40,346.81 payable to their trustee under Article III of the plan.

The March payment was made prior to the confirmation of the plan. So far as appears it was a proper payment when made, because the pre-April income was more than enough to pay this distribution as well as accrued operating expenses. What brought about the so-called operating deficit was the charge against pre-April income of taxes accruing after April 1st in the sum of $6,922.98. The plan contemplated that this charge could be deducted from cash held by the Prudence Trustees as of April 1st and still leave a possible surplus after payment of pre-April operating expenses. No provision was made for the contingency that the deduction might produce a deficit. It seems to us that the risk of such a deficit should be borne by the new corporation, which was to receive the sum so deducted, rather than by the certificate holders, whose interest in the pre-April cash was contingent on there being a surplus after the specified charges were made against it, and who were unconditionally entitled under the plan and the consummation order of June 24th, from which the new company took no appeal, to receive the sum of $51,341.47 less reorganization expenses, that proved to be $10,994.66. The difference of $40,346.81 was the sum directed to be paid.

The order was correct and is affirmed.